EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of a black Motorola cell phone, Serial #ZD222FLQWD, IMEI 355308901160356, located at the FBI Muskogee Resident Agency at 120 S. Edmond PL #200 Muskogee, Oklahoma, within the Eastern District of Oklahoma | Case No. 24-MJ-94-GLJ |

## APPLICATION FOR SEARCH WARRANT

I, Austin McCourt, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

### SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 841(a)(1) and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
AUSTIN MCCOURT
SPECIAL AGENT, FBI

Sworn before me

Date: 3/14/2024

_____
UNITED STATES MAGISTRATE JUDGE

City and state: Muskogee, Oklahoma

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Austin C. McCourt, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

## AGENT BACKGROUND

2. I have been employed as a Special Agent ("SA") of the U.S. Department of Justice, Federal Bureau of Investigation ("FBI"), since April 2022, and am currently assigned to investigate Indian Country crimes in the Muskogee Resident Agency. Prior to being assigned to Muskogee, I attended FBI training in Quantico, Virginia. As a Special Agent with the FBI, I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and I am authorized to request this search and seizure warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. During my time as a Special Agent, I have participated in numerous criminal investigations as the primary investigator. I have also received significant training in criminal investigations.

3. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device further described in Attachment A—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4.      I am familiar with the facts and circumstances of this investigation because of my personal participation in the investigation referred to in this affidavit and information received by other law enforcement officers.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property to be searched is a black Motorola cellular telephone, Serial No. ZD222FLQWD, IMEI 355308901160356 (hereinafter the "Target Device"). It was the personal cellular telephone phone of C.R., who is now deceased. The Target Device is currently located at the FBI Muskogee Resident Agency at 120 S. Edmond PL #200 Muskogee, Oklahoma, within the Eastern District of Oklahoma.

## VENUE

7.      The facts and circumstances alleged in this affidavit occurred within the Eastern District of Oklahoma. The property to be searched is currently located in the Eastern District of Oklahoma.

## PROBABLE CAUSE

8.      On February 7, 2024, two individuals identified as C.S. and K.W. drove a brown Chevrolet 2KH truck (Oklahoma Tag# BOP463) into the driveway of S.E.'s residence, located at 405 Grand Avenue Poteau, Oklahoma 74953. One of the individuals honked the horn of the vehicle. In response, S.E. came out of the residence, at which time C.S. and K.W. ran away, leaving the truck behind. S.E. approached the vehicle and found C.R. in the back seat. He was mostly unresponsive. S.E. has stated that C.R. was able to relay to her that he took fentanyl.

9. Emergency Medical Services were notified and arrived at the scene to render medical aid to C.R. for an apparent drug overdose. C.R. was taken to Mercy Hospital in Fort Smith, Arkansas, for further aid and was placed on a ventilator. C.R. never regained consciousness and was pronounced dead on February 10, 2024. An attending medical physician stated the victim likely overdosed on fentanyl or some other opioid. Fentanyl and other commonly prescribed opioids are Schedule II narcotics under the United States Controlled Substances Act.

10. The Affiant met with C.R.'s mother, L.M., at Mercy Hospital on February 9, 2024. L.M. stated that she had her son's cellular telephone (the Target Device) and that she believed that there were likely communications stored on the device with the individuals that provided C.R. with the drugs that he overdosed on. L.M. knew C.R. had been a drug addict for years. Specifically, based on statements C.R. made to her, she believed that he had been using fentanyl for about a year. L.M. also knew of individuals that had sold drugs to C.R. and C.R.'s ex-wife, J.R., as recently as January 2024. At that point, the Affiant asked L.M. if he could take possession of the Target Device to further his investigation into the death of her son. L.M. agreed, signed a property release form, and provided the passcode to the Target Device.

11. The Affiant took custody of the Target Device and placed it into airplane mode to prevent the destruction of any data stored on the device. Based on the information gathered thus far, the Affiant believes that it is more likely than not that access to the Target Device will lead to the identity of the individual or individuals who distributed a controlled substance to the victim.

12. Based on my training and experience I know that drug dealers commonly use cellular telephones or other electronic devices to communicate with users and other sellers of illegal controlled substances, negotiate prices for illegal controlled substances, solicit sales of

illegal controlled substances, facilitate transactions where illegal controlled substances are sold, and photograph or video record money and/or drugs obtained through illegal means;

13. Based on my investigative experience and the facts as set forth in this affidavit, I submit there is probable cause to believe that the Target Device was recently involved in the commission of a crime. Specifically, it was used by the victim to facilitate the purchase of narcotics from a local drug dealer. In other words, an unknown individual knowingly distributed a controlled substance to C.R. Such a deal would amount to the Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), and information concerning that deal is likely recorded on the Target Device.

14. There is also probable cause to search the Target Device for evidence, instrumentalities, and/or fruits of that crime, which are further described in Attachment B.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. *Wireless telephone:* A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text

messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs

    may also include global positioning system ("GPS") technology for determining the location of the device.

  f. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  16. Based on my training, experience, and research, and from consulting the manufacturer's advertisements, I know that the Target Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and can access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

  17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

  18. *Forensic evidence*: As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination*: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent

with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution*: Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Device described in Attachment A, to seek the items described in Attachment B.

Respectfully Submitted,

Austin C. McCourt. Special Agent
Federal Bureau of Investigation

Sworn to: March 14, 2024

UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**DESCRIPTION OF THE PROPERTY TO BE SEARCHED**

The Target Device is a black Motorola cellular telephone, Serial #ZD222FLQWD, IMEI 355308901160356, which belonged to the now deceased C.R. It was given to federal agents by C.R.'s mother and is currently located at the FBI Muskogee Resident Agency at 120 S. Edmond PL #200 Muskogee, Oklahoma, within the Eastern District of Oklahoma. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED AND PROCEDURES TO FACILITATE EXECUTION OF THE WARRANT

All records on the Target Device described in Attachment A, that relate to violations of 21 U.S.C. § 841(a)(1), including but not limited to:

1. address and telephone/pager number listings;
2. electronically composed memorandum;
3. phone book listings to include names, aliases, telephone/pager numbers, codes, types of phone numbers and addresses;

All records on the Target Device described in Attachment A, that relate to violations of 21 U.S.C. § 841(a)(1), occurring from **February 11, 2023, to February 11, 2024**, including but not limited to:

4. numeric/alphanumeric messages sent or received; to include messages sent or received via email and other messaging applications.
5. verbal messages sent or received;
6. photos and videos;
7. historical GPS locations;
8. internet web browser history data;
9. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.

The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.